SEMON BACHE & Co. *v.* UNITED STATES (No. 4074) [1]

[1] T. D. 49339.

United States Court of Customs and Patent Appeals, December 23, 1937

*Jerome G. Clifford* for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Ralph Folks* and *Marcus Higginbotham, Jr.,* special attorneys, of counsel), for the United States.

[Oral argument December 6, 1937, by Mr. Clifford and Mr. Folks]

Before BLAND, Acting Presiding Judge, and HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the classification for duty of certain glass rods imported at the port of New York during the years 1931, 1932, 1933 and 1934.

They were classified and assessed for duty by the collector under subparagraph (b) of paragraph 218 of the Tariff Act of 1930, at the rate of 65 per centum ad valorem. Appellant protested, claiming the merchandise to be dutiable under paragraph 227 as optical glass at the rate of 50 per centum ad valorem, or under the provisions of paragraph 230 at the rate of 50 per centum ad valorem. Various other claims were made in the protests, none of which were pressed before the trial court or before us.

At the trial two witnesses testified in behalf of appellant, and certain exhibits, both physical and documentary, were introduced. Among

the physical exhibits so introduced were samples of the involved merchandise, marked "Collective Exhibit 1." The Government offered no evidence.

The Customs Court, First Division, overruled the protests and entered judgment accordingly, whereupon appellant took this appeal from such judgment.

The provisions of said tariff act here involved read as follows:

PAR. 218.   *     *     *     *     *     . *

(b) Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem   * * *.

PAR. 227. Optical glass or glass used in the manufacture of lenses or prisms for spectacles, or for optical instruments or equipment, or for optical parts, scientific or commercial, in any and all forms, 50 per centum ad valorem.

PAR. 230.   *     *     *     *     *     *

(d) All glass, and manufactures of glass, or of which glass is the component of chief value, except broken glass or glass waste fit only for remanufacture, not specially provided for, 50 per centum ad valorem.

In its decision the Customs Court said:

The testimony establishes that the merchandise at bar is "rods, canes   * * * wholly or in chief value of glass," and that it is "optical cane" glass or "optical glass." It will be observed that paragraph 218 (b) provides for rods or canes "*for whatever purpose used*", and that paragraph 227 relates to "optical glass or glass used in the manufacture of lenses", etc., "*in any and all forms.*" It will be noted in addition that paragraph 227 indicates that the glass covered thereby is such as is "used in the manufacture of lenses or prisms for spectacles, or for optical instruments or equipment, or for optical parts, scientific or commercial." It has not been established that the glass at bar is used in the manufacture of lenses or prisms for spectacles. Therefore, we must assume it is not this class of glass. It is used in making reflecting danger signals or signs for automobiles, or reflecting advertising signs. Is such a use "in the manufacture of   * * * optical instruments or equipment for optical parts"? In other words, are reflecting danger signals or signs for automobiles or reflecting advertising signs "optical instruments or equipment" or "optical parts"? We think not.

It will be observed that the words of paragraph 227 are "optical glass or glass used in the manufacture of lenses or prisms for spectacles, or for optical instruments." We are of opinion that what follows the third word in this clause "or" is in effect a definition of such optical glass as is intended to be covered by the paragraph, viz, that said optical glass is such glass as is used as material in the manufacture of lenses or prisms for spectacles, or for optical instruments or equipment, or for optical parts. (See quotation from *Central Scientific Co.* case, *infra*.) It does not seem to us that the reflector buttons or even the lenses that are manufactured from the glass rods at bar are lenses "for optical instruments or equipment, or for optical parts." Can flashlights, advertising signs, or reflecting danger signals for automobiles be termed "optical instruments or equipment" or "optical parts"? We think not.

The court expressly held that, "as shown by the facts," the involved glass rods are not embraced within the provisions of paragraph 227, and that, under the authority of our decision in the case of *United States* v. *Meadows, Wye & Co.*, 23 C. C. P. A. (Customs) 276, T. D. 48143, they were properly classified by the collector under the provisions of paragraph 218 (b).

Before us appellant contends that the Customs Court did not correctly construe said paragraph 227. In the brief of its counsel it is stated:

Had Congress recognized "optical glass" as glass irrevocably dedicated to the uses enumerated in the second clause then there would have been no reason for the *eo nomine* provision for optical glass. The intent of Congress could not have been to describe the same kind of glass in both clauses. Therefore, it is obvious that the intendment of this paragraph is to provide for two different kinds or classes of glass, one of which "optical glass" is provided for *eo nomine* without qualification, limitation or restriction, the other of which, non-optical glass, was very carefully restricted.

Reading the word "or" as the word "and" enables the paragraph to express correctly the legislative intention. Such reading is permissible in order to give expression to the real enactment (*People ex rel Municipal Gas Company* v. *Public Service Commission*, 224 N. Y. 156, 165).

We do not find it necessary to pass upon the correctness of the construction given the paragraph by the trial court for the reason that we are convinced that the record fails to establish that the imported merchandise is optical glass within the meaning of that term as used in paragraph 227, either as construed by the trial court or by appellant's counsel.

Optical glass is defined by lexicographers as follows:

Optical glass: A flint-glass used in the manufacture of optical instruments. It contains a large proportion of lead, and hence is of great density.—*Century Dictionary*.

Optical glass: Flint glass containing a high percentage of lead.—*Funk & Wagnalls New Standard Dictionary*.

Optical glass: An extra fine quality of flint or crown glass used for making lenses, prisms, etc.—*Webster's New International Dictionary*.

Optical glass.—The term is usually regarded as applying to the highest qualities of glass used for telescopes, microscopes, camera lenses and scientific instruments of precision and not to spectacle lenses and pressed lenses for which inferior glass is used. * * *—*Encyclopaedia Britannica*, Vol. 10, p. 417.

From an examination of modern standard works on glass making we are of the opinion that optical glass may be made of crown glass, and that a high percentage of lead is not essential.

In the Summary of Tariff Information 1929, Vol. 1, p. 551, we find the following statement:

OPTICAL GLASS

*Description and uses.*—Optical glass is clear, pure, homogeneous glass of an exact chemical composition that must satisfy the specifications of a glass for use in

optical instruments. In addition to its use for optical instruments, several varieties are used for spectacles.and eyeglasses.

Optical glass has an important military significance in such instruments as range finders, gun sights, and periscopes. Its commercial uses for spectacles and eyeglasses furnish a steady and increasing, though limited, demand in the United States.

Upon page 552 is found a statistical analysis of·imports of optical glass by uses for the years 1924 to 1927, inclusive. From this it appears that the only uses of optical glass imported during those years were for optical instruments and spectacles.

From the foregoing it clearly appears that optical glass is of very high quality, and is such as is used for optical instruments. In our opinion the evidence in the case at bar does not establish that the glass here involved is optical glass within the common meaning of that term. It is true that the trial court held that the imported glass was optical glass, but it also held that there was a serious question whether or not the glass rods or canes in question are glass material of the kind provided for in paragraph 227.

With regard to the use of glass rods of the character here involved, the testimony is to the effect that they are used in the manufacture of reflector buttons, which are placed in signs at curves and crossings of roads as signals to reflect the light from automobile headlights, and that such buttons consist in part of said glass, which, the witnesses state, is made into lenses for such buttons. Appellant's witness Isidore Sobel testified that said glass is also used "for flashlights; they use them for *cheap* cameras, and articles of that nature." [Italics ours.]

A reflector button is not an optical instrument, as that term was defined by this court in the case of *United States* v. *Bliss & Co. et al.,* 6 Ct. Cust. Appls. 433, T. D. 35980.

While it is true that cameras are optical instruments, and there is testimony in the case that glass rods of the character here involved are used as material for lenses for cheap cameras, there is no evidence that such use is the chief use of such glass, but on the contrary we think it fairly appears that the chief use of such rods is not for optical instruments.

Therefore, if the doctrine of use be applied, we are of the opinion that appellant has not established that the involved glass is chiefly used in making lenses for optical instruments.

There is no evidence that glass of the character here involved is used for making lenses or prisms for spectacles.

However, we are of the opinion that use is not the sole consideration in determining whether a given glass is optical glass. It must, according to the definitions hereinbefore quoted, be of very high quality, and according to the Summary of Tariff Information·hereinbefore quoted, it must be of exact chemical composition that must satisfy

the specifications of a glass for use in optical instruments. Appellant's counsel upon oral argument stated that he agreed with this statement.

While it is true that both of the witnesses for appellant testified that the involved glass was optical glass, a careful examination of their testimony satisfies us that such testimony should have no probative force.

Appellant's witness Sobel, vice president of appellant, testified in part as follows:

Q. From your experience and qualifications, as you have related them, are you able to distinguish one variety of glass from another?—A. I think so.

Q. Are you able to distinguish glass having optical qualities or properties from glass not having optical qualities?—A. The important features are homogeneous mass, constant refractive index, freedom from seeds, bubbles, scratches, and striae.

    *       *       *       *       *       *       *

Q. From your experience and knowledge, as you have thus described it, can you tell whether collective exhibit 1 contains the optical properties which you have indicated?—A. *Not simply by a casual looking at it.* [Italics ours.]

    *       *       *       *       *       *       *

Q. Does collective exhibit 1 contain the optical properties which you have indicated?—A. Yes.

    *       *       *       *       *       *       *

Q. What enables you to tell, Mr. Sobel?—A. Well——

Presiding Judge McCLELLAND. From a mere optical examination what enables you to tell?

A. (continuing) From a mere casual examination it would be impossible to tell the properties of any glass. *They have to be chemically examined, both for refractive index and index as to component parts.* [Italics ours.]

Presiding Judge McCLELLAND. You were asked the question if you could tell, and you said yes.

The WITNESS. Yes; but I didn't say how. There have to be chemical tests made; likewise, refractive index tests.

Presiding Judge McCLELLAND. But in the absence of chemical tests you couldn't tell?

The WITNESS. No, sir.

By Mr. CLIFFORD [attorney for appellant]:

Q. Well, can you tell whether exhibit 1 has the optical properties that you specified?

Mr. HIGGINBOTHAM [attorney for the Government]. That is objected to, on the same ground. It is the same question over again: "Can you tell?" He said Yes. Now he says that he can't tell without analyzing them.

Mr. CLIFFORD. Just a minute. He said that he can't tell without analyzing them. That is. quite all right; but I asked him can he tell, and how he can tell.

Presiding Judge McCLELLAND. He asked him that question, and he said that he could only tell after an analysis.

By Mr. CLIFFORD:

Q. How do you know, then, Mr. Sobel, that exhibit 1 possesses the optical qualities which you have indicated.

Mr. HIGGINBOTHAM. That is objected to, on the ground that he has clearly said, in answering the court, that he could not tell.

Mr. Clifford. He didn't say that he couldn't tell.

Presiding Judge McClelland. Do you want to modify that answer?

The Witness. I could explain how we check the refractive index and chemical properties of the glass, but I don't do it myself. That is the reason I can't answer the question. We have it done. We have our customers, who require a certain refractive index. If they didn't get it they would refuse the glass.

\*     \*     \*     \*     \*     \*     \*·

By Mr. Clifford:

Q. Mr. Sobel, has any question at any time been raised by the customers to· whom you have sold this collective exhibit 1, or glass like collective exhibit 1,. as to its optical properties?

Mr. Higginbotham. That is objected to, on the ground that if a question was· raised it was no doubt raised in writing; and we are entitled to the letter.

Presiding Judge McClelland. You may answer Yes or No.

A. Yes.

By Mr. Clifford:

Q. What was that objection?—A. Well, in the ordinary course of business we· have had many complaints. Sometimes the refractive index is not correct. That would throw the shipments out. Sometimes the qualities are objected to.. It may have bubbles, seed, striae, and so on.

Q. In such cases they have been rejected?—A. Yes, sir.

\*     \*     \*     \*     \*     \*     \*

By Mr. Higginbotham:

X Q. You say that you follow your particular importations of collective exhibit; 1 into consumption. Do you?—A. We have.

X Q. Not "we." I am asking you, Mr. Sobel.—A. Yes.

X Q. Now, when you followed it into consumption were they used to make these· reflecting colors for traffic lights?—A. They were made into lenses.

X Q. I am asking you now. Yes or No.—A. Some of them.

X Q. Were they made into reflectors for traffic lights?—A. Some of them have· been, yes, sir; some of them.

X Q. What is the other use besides that?—A. They use them for making lenses· for *cheap* cameras, and for other uses *where lenses are adopted.*

X Q. What are the other uses?—A. *They use them for flashlights;* they use them. for *cheap* cameras, and articles of that nature. [Italics ours.]

\*     \*     \*     \*     \*     \*     \*

By Mr. Clifford:

\*     \*     \*     \*     \*     \*     \*

R. Q. Now, Mr. Sobel, Mr. Higginbotham several times has spoken about; exhibit 1. He was asking you about glass rods. Does that refer to the form of the· glass?—A. Yes, sir.

R. Q. What is exhibit 1?—A. Optical cane.

The witness Charles D. Ryder testified in part as follows:

Q. Mr. Ryder, with what company are you connected?—A. National Colortype Company, Bellevue, Kentucky.

Q. What is the business of that company?—A. It is engaged in the manufacture of signs for traffic regulation, and of reflector buttons, so as to make those signs luminous from the light projected on them by automobile headlights.

Q. How long have you been with them?—A. About six years.

Q. What is your position with them?—A. My title is chief engineer of the company.

\*     \*     \*     \*     \*     \*     \*

Judge SULLIVAN. Let me ask you a question or two. I am rather dull on this optical question. Can you make an optical lens out of any piece of cane glass, or does the glass itself, in its manufacture have to have some properties of some kind in the mass as made?

The WITNESS. The chief factor I should say is the index of refraction. That is the factor which tells an engineer how much the ray of light that enters the glass will be refracted. He must know that before he starts his calculations.

Judge SULLIVAN. How does that get into the glass?

The WITNESS. I can't answer that question.

*       *       *       *       *       *       *

By Mr. CLIFFORD:

Q. Will you please state what kind of glass that is—collective illustrative exhibit B [glass rods used by National Colortype Company]?—A. Optical cane, as we know it.

Mr. HIGGINBOTHAM. I ask that that be stricken out.

By Mr. CLIFFORD:

Q. Just say Yes or No, what it is; not as you know it.—A. As optical glass.

Mr. HIGGINBOTHAM. That is objected to. The witness has just said in answer to Judge Sullivan's questions that he could not answer what the elements were that went into the makeup of optical glass.

Mr. CLIFFORD. Nobody else here this morning has contended that anything in glass makes its optical element.

Presiding Judge McCLELLAND. Objection overruled.

Mr. HIGGINBOTHAM. Exception.

Presiding Judge McCLELLAND. What did you give as your definition of the term "optical glass," as you understand it?

The WITNESS. As I understand it, it is a glass that is free from certain imperfections, which are objectionable when they appear in a lens; such as striae, and bubbles, and scratches, or any other imperfections that can be seen ocularly, just by casual examination. *And then the refracting power of that lens must be uniform, one lens to another.* Now, if we don't have those qualities or properties, why then the glass is unfit for use in lenses. [Italics ours.]

*       *       *       *       *       *       *

By Mr. HIGGINBOTHAM:

X Q. Can you tell optical glass by merely looking at it?—A. I cannot.

X Q. How can you tell whether it is optical glass?—A. Because if the index of refraction varies our focal——

X Q. I said, how can you tell whether or not it is? How? By what method?—A. I was going to explain that.

X Q. Pardon me.—A. We test in this manner.

X Q. Not what "we" do. I am examining you. You are the witness.—A. I would test in this manner. Is that better? I would form a lens, and I would know the calculated focal point of that lens. If that varies I know that the index of refraction that I used in my figures is not what I am maintaining in the glass, and that by constantly checking lenses, as I do, I would detect any variation in the index of refraction. That is the commercial way of testing. I have carried that out constantly.

X Q. Do you make that test before you make all of these so-called lenses of glass rods?—A. Our tests are conducted shortly after the lenses are formed. They are carried on all day long every day in our plant.

X Q. Do I understand then that you take 100 or 200 glass rods and mould them into what you call lenses before you make a test to find out whether they

were proper for your business?—A. We would not consume over a dozen rods before we would find out.

* * * * * * *

X Q. Do you know what is the variation in the refractive index of glass rods such as collective exhibit 1 and collective illustrative exhibit B, used by your concern, and the refractive index in general supplied, the glass rods used by other concerns? Do you know?

Mr. CLIFFORD. If your Honor please, I object to the question as being vague and indefinite.

Presiding Judge McCLELLAND. It is for the witness to say. He should know whether he can answer it or not.

A. The index of refraction——

By Mr. HIGGINBOTHAM:

X Q. I am asking you, do you know?—A. I do, to the first part of your question, and I do not for the second part.

X Q. That is, you do not know what the variation of refraction, and the index used by your company in glass rods is?—A. No; just the reverse. I know approximately what it is in the glass which we use, but I don't know what it is in the glass used by other concerns.

X Q. That variation varies to what extent in the glass which you use?—A. In the glass which we use it will run from 1.5 to 1.52; not over that.

X Q. Does that apply to all colors?—A. To all colors.

We have quoted thus at length from the testimony of appellant's witnesses to show that, in their opinion, whether or not glass is optical glass cannot be ascertained from ocular inspection, but the glass must be subjected to certain tests, particularly as testified to by the witness Sobel, to determine the "refractive index and index as to component parts." This witness testified that, to determine this, the glass must be chemically examined, but there is no evidence in the case that the involved glass rods were so examined.

With respect to the refractive index referred to by the witness, in a work entitled "Glass Manufacture," by Walter Rosenhain, quoted from in appellant's brief, it is stated at page 209 that optical glass has a refractive index range of 1.40 in one direction to 1.80 in the other direction. There is nothing in the record to show the refractive index of the involved glass.

Said witness Sobel further testified that in the ordinary course of business his company had many complaints, and that sometimes the refractive index is not correct, and that in such cases the glass is rejected by the purchaser.

Certainly the testimony of this witness does not establish that the involved glass is optical glass.

Appellant's other witness, Ryder, also testified that he could not tell optical glass by merely looking at it, but that tests are necessary to determine its character. He also testified with respect to the manner in which he made such tests, but he did not testify that he had ever made such tests of appellant's Collective Exhibit 1, or of any of the glass here involved.

We are therefore of the opinion that, upon the record in this case, it could not be properly held that the involved glass is of the character provided for in paragraph 227, even under appellant's theory of the proper construction of the paragraph, and it becomes unnecessary to consider whether the phrase in paragraph 218 (b), "for whatever purpose used," includes any optical glass of the character provided for in paragraph 227.

The merchandise involved not being optical glass, so far as the record discloses, it was clearly classifiable under paragraph 218 (b) and could not fall within the provisions of paragraph 230, which is the alternative claim of appellant, for upon that question our decision in the case of *United States* v. *Meadows, Wye & Co., supra*, is controlling.

Appellant contends that the legislative history establishes that Congress did not intend that optical glass should be embraced within the provisions of paragraph 218 (b). Whether the term "glass," as used in paragraph 218 (b), should be held to include optical glass in the form of rods or canes, and whether in determining that question the legislative history of the paragraph might be resorted to, it is unnecessary for us here to decide.

While there is certain language in the opinion in the *Meadows, Wye & Co.* case, *supra*, that may be construed as holding that optical glass in the form of canes and rods is included in the provisions of paragraph 218 (b), that specific question was not before the court in that case.

For the reasons stated herein, the judgment appealed from is *affirmed.*